UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BENJAMIN BROWNLEE                          CIVIL ACTION

VERSUS                                     NO: 08-4202

CITY OF HAMMOND, ET AL.                    SECTION: R

## ORDER AND REASONS

Before the Court are two Motions for Summary Judgment, one
filed by defendants Ryan Distefano and Willie Graves (R. Doc. 20)
and another filed by Matthew Brady and the City of Hammond (R.
Doc. 21).  For the following reasons, both motions are GRANTED
with respect to the claims arising under federal law.  The
remaining state-law claims are DISMISSED.


## I. Background

This case arises from an incident that took place in the
early hours of August 16, 2007, on Louisiana Highway 442 in
Livingston Parish, Louisiana.

According to plaintiff's complaint, he and his seventeen-
year-old passenger Eric Hunt had passed a Dodge Durango while
traveling along Highway 442.  Immediately afterward, the Durango
accelerated and tailgated plaintiff until he stopped in his
landlord's driveway.  Upon stopping, the Durango activated a

1

flashing police light before the driver, Officer Matthew Brady of the City of Hammond Police Department, who was outside his jurisdiction at the time, exited and approached plaintiff's vehicle. Brady, who according to plaintiff was not easily identifiable as a police officer, asked plaintiff for his license and registration. Plaintiff asked Brady for his identification or credentials as a police officer. Instead of providing them, Brady threw plaintiff on the trunk of his car and told him to shut up about his credentials. Brady then asked plaintiff if he had anything illegal in his car, to which plaintiff replied that he did not. Brady allegedly searched the car anyway and, upon seeing that plaintiff had a dashboard-mounted emergency flasher, indicated that he was going to charge plaintiff, then a volunteer with the Natalbany Fire Department, with impersonation of a police officer.

At this point Brady, who was outside the jurisdiction of the City of Hammond, called the Livingston Parish Sheriff's Office for assistance. Deputy Ryan Distefano of the Sheriff's Office arrived, conducted a field sobriety test on plaintiff, and then placed him under arrest for suspicion of driving while intoxicated, contributing to the delinquency of a minor, and recklessly operating a motor vehicle. Plaintiff was taken to jail, where he was administered a breathalyser test before being cited for driving while intoxicated. Plaintiff was later charged

with DWI, but the charge was dropped.

Brady submits evidence that he had just gotten off duty and was driving along Highway 442 when plaintiff's vehicle came up behind him. Plaintiff turned on his volunteer firefighter's emergency lights, and Brady pulled to the side of the road to let him pass. When plaintiff pulled up behind him as if making a traffic stop, Brady engaged his own flashing police lights, at which point plaintiff sped off. After radioing the Sheriff's Office for Livingston Parish, Brady followed plaintiff until he stopped in plaintiff's landlord's driveway shortly thereafter. After both cars had stopped, Brady approached the vehicle, where he observed that both plaintiff and Hunt had been drinking alcohol. He further observed an open alcohol container and a hat marked "police" inside plaintiff's vehicle. Brady did not arrest plaintiff or Hunt at this time, but Hunt stated that he and plaintiff were bored and thought it would be funny to try to pull over a vehicle.

Once Deputy Distefano arrived, Brady explained to him what he had observed. Distefano could smell alcohol on plaintiff's breath, and plaintiff admitted he had been drinking. In the course of the discussion, Brownlee mentioned to Distefano that he had intended to play a joke on an unsuspecting vehicle by coming up behind it and activating the emergency lights. After this, Distefano performed a sobriety test, which plaintiff did not

3

pass.  Distefano then arrested plaintiff and took him to the
Sheriff's Office, where plaintiff failed a breathalyser
examination and was cited for driving under the influence of
alcohol.  This charge was later dismissed.

As a result of this incident, plaintiff filed suit under 42
U.S.C. §§ 1981 & 1983 against officer Matthew Brady, the City of
Hammond, officer Ryan Distefano, and Willie Graves, the Sheriff
of Livingston Parish.  He alleges that Brady and Distefano
violated his Fourth Amendment rights by stopping him, searching
his vehicle, and arresting him without probable cause.  He
further alleges that they violated his Fourth Amendment right
against malicious prosecution.  He also alleges the state law
claims of malicious prosecution, false arrest, and battery, and
includes the City of Hammond and Sheriff Graves in these
charges.[1]  He asks for punitive damages from Brady and Distefano.
Defendants now move for summary judgment.


## II. Legal Standard

Summary judgment is appropriate when there are no genuine
issues as to any material facts, and the moving party is entitled
to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c);

---

[1]  Plaintiff also brought a state-law defamation claim
against the City and Brady, but he does not oppose summary
judgment on those claims.  He additionally does not oppose the
summary judgment motion with respect to the § 1983 claims against
the City.  (R. Doc. 38-3 at 8.)

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish the existence of a genuine issue for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**III. Discussion**

*A. Defendants Matthew Brady and City of Hammond*

As an initial matter, plaintiff has brought this § 1983 suit against Matthew Brady both in his official and individual capacities. Claims brought under § 1983 against a defendant in his individual capacity require a showing that the official, acting under color of state law, deprived the plaintiff of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Claims against persons in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690 n. 55 (1978)). When bringing suit against a defendant in his official capacity, a plaintiff must make a more significant showing than when he sues an individual defendant. The plaintiff must show that the governmental entity represented by the official defendant "is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (citations omitted). In addition, if the defendant in his official capacity "has the authority to establish final municipal policy [and] makes a decision or orders a course of action, the municipality may be held liable for the

officer's decision or order." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-82 (1986)).

Here, while plaintiff has abandoned his § 1983 claims against the City of Hammond, he still claims that Brady is liable in his official capacity. He has pointed to nothing, however, that might indicate that the City was the "moving force" behind the alleged violations, or that Brady was a "final policy maker" for the City. Because the record contains nothing to this effect, Brady is entitled to summary judgment on all claims in his official capacity.

Plaintiff also brings claims against Brady in his individual capacity. In order to make out a § 1983 claim against an official in his individual capacity, a plaintiff must establish that the "official, acting under color of state law, caused the deprivation of a federal right." *Graham*, 473 U.S. at 166; *see also Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Brady does not dispute that he acted under the color of state law at all relevant times. According to plaintiff, Brady violated his Fourth Amendment rights in four ways: (1) by stopping his vehicle; (2) by searching his vehicle without consent; (3) by using physical force upon him, and (4) by initiating a malicious prosecution against him. In order to prevail on summary judgment, Brady must demonstrate that either

there was no constitutional violation or, if there was, that he can seek qualified immunity as to each of these claims. "Qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 409 (5th Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)) (quotation marks omitted). Once an official raises a qualified immunity defense, the burden is on the plaintiff to rebut it. *Zarnow*, 500 F.3d at 407. The plaintiff must show that defendants violated plaintiff's constitutional rights, and that the violation was objectively unreasonable. *Id*. According to the Fifth Circuit,

> The inquiry into reasonableness asks whether the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates the right. If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity. Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable.

*Id*. at 407-08 (citations, quotation marks, and brackets omitted).

First, plaintiff claims that Brady violated his Fourth Amendment rights by stopping his vehicle. The stopping of a vehicle by a police officer is a "seizure" under the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). In the Fifth Circuit, the legality of traffic stops by police officers are analyzed under the framework established by *Terry v.*

8

*Ohio*, 392 U.S. 1 (1968). *See United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc); *United States v. Shabazz*, 993 F.2d 431, 434-35 (5th Cir. 1993). Under this framework, "[c]ourts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related to the circumstances that justified the stop." *Bringham*, 382 F.3d at 506. "Once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion." *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003).

Brady was outside his jurisdiction at the time he made the stop, which in some circumstances might indicate that the initial stop was unjustified. *See, e.g., Ross v. Neff*, 905 F.2d 1349, 1354 (10th Cir. 1990) ("A warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause."). Order 100 of the Hammond Police Department, however, allows its officers to exercise authority outside the City limits when "a felony violation is observed." (R. Doc. 21, Ex. A at 9.) Brady contends that he had probable cause to stop plaintiff for the felony offense of false impersonation of a peace officer, which is prohibited by LA. REV. STAT. § 14:112.1. The offense consists of "[i]mpersonating any peace officer or assuming, without

9

authority, any uniform or badge by which a peace officer is lawfully distinguished" and "[p]erforming any act purporting to be official in such assumed character," and it requires "the intent to injure or defraud or to obtain or secure any special privilege or advantage." *Id*. Conviction does not require that the defendant wore a police uniform or displayed a badge. *See State v. Gordon*, 668 So. 2d 462, 464 (La. Ct. App. 1996). It does require that the defendant committed the act to gain a special privilege or advantage enjoyed by police officers by not the average citizen. *See State v. Nelson*, 367 So. 2d 317, 318 (La. 1979); *State v. Mayberry*, 680 So. 2d 722, 724 (La. Ct. App. 1996).

A justifiable stop under *Terry*, however, does not require that all the elements for a conviction be present. The Court must "consider the facts and circumstances of each case, giving due regard to the experience and training of the law enforcement officers, to determine whether the actions taken by the officers, including the length of the detention, were reasonable under the circumstances." *Brigham*, 382 F.3d at 507.

Here, Brady's stop was justified at the outset. Brady contends that plaintiff pulled up behind him in mock performance of a police stop. He provided deposition testimony that plaintiff activated his lights while behind him, and Brady assumed it was a volunteer fireman and pulled off onto the side

10

of the road. (R. Doc. 21, Ex. A at 3.) He stated that
plaintiff's vehicle "had started to pull over to the side of the
road with me," at which point he activated his police lights.
(*Id.*) His suspicions were heightened when he noticed that
plaintiff's vehicle was actually pulling over behind him and "not
just going around [him] — which would normally be what a
volunteer fireman would do." (*Id.*, Ex. A at 7.) He additionally
noted that "there was plenty of room for [plaintiff] to pass and
not have to pull in behind [him], no traffic coming or anything."
(*Id.*) Brady's version of the events is substantially
corroborated by plaintiff's passenger, Eric Hunt. Hunt stated
that he and plaintiff decided to play a joke on Brady by coming
up behind him and turning on the flashing lights to "get him to
pull over." Hunt stated that they intended to pretend to pull a
vehicle over, but not to actually stop and get out of the car.
(R. Doc. 21, Ex. E at 6-7.) Once they came up behind Brady and
activated the lights, Brady activated his own flashing lights, at
which point plaintiff and Hunt realized the other vehicle was a
police officer. They passed him and sped off. (*Id.*) Brownlee
himself admitted to Distefano that he "turned on the lights
because they thought it would be funny to turn lights on, but had
no intentions of pulling over the vehicle." (*Id.*, Ex. D at 3.)

The Court views the facts in the light most favorable to the
nonmovant. *Minter v. Great Am. Ins. Co. of New York*, 423 F.3d

460, 465 (5th Cir. 2005).  In response to a well-supported motion for summary judgment, a nonmovant must show through specific citations to record evidence that a genuine issue of material fact exists for trial.  *See Ham v. Brice*, 203 Fed. Appx. 631, 633 (5th Cir. 2006); *Garcia v. LumaCorp, Inc.*, 429 F.3d 549, 555 (5th Cir. 2005) ("we will uphold a grant of summary judgment when the nonmovant is unable, in turn to point to any evidence in the record that would sustain a finding in the nonmovant's favor on any issue on which he bears the burden of proof at trial") (quoting *Carson v. Dynegy, Inc.*, 344 F.3d 446, 451 (5th Cir. 2003)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "[A] plaintiff in a suit filed under 42 U.S.C. § 1983 has the burden of proving each element of the constitutional violation." *Bowden v. City of Electra*, 152 Fed. Appx. 363, 367 (5th Cir. 2005).  In its response to Brady and the City's motion for summary judgment arguing that no genuine issue of material fact existed for trial, plaintiff argues that the stop was illegal.  In support of this claim, however, he attaches only two pages of deposition testimony that make no reference to the tailgating incident.  (R. Doc. 38, Ex. C.)

The four additional pages of deposition testimony attached to plaintiff's separate response to Distefano and Graves' motion for summary judgment admit that plaintiff's "traffic backer" lights, though not his dashboard lights, were flashing at the

12

time of the incident. (R. Doc. 28, Ex. C at 4-5.) It further states that Brady never fully pulled to the shoulder of the road because there was "no shoulder to pull over" upon, and that Brady never came to a complete stop. (*Id.*) Brady, however, does not dispute this. Brady's testimony notes that plaintiff "started to pull over to the side of the road with me" before Brady "perceived [this] to be a stop of [his] vehicle." (R. Doc. 21, Ex. A at 4-5.) He never states that the vehicles pulled onto the shoulder, or that either vehicle came to a stop while on Highway 442. Brady suspected, based on the color of the flashing lights, that plaintiff was a volunteer firefighter en route to a fire, but noted that plaintiff had plenty of room to pass and that a volunteer firefighter would pass Brady's vehicle instead of pulling up behind him. (*Id.*, Ex. A at 3, 7.) Plaintiff does not dispute this either. Lastly, Brownlee admitted to Distefano that he had intended to play a joke on a random driver by coming up behind him and turning on the emergency lights. (*Id.*, Ex. D at 3.) The facts in evidence therefore indicate that plaintiff pulled up behind him on Highway 442 around 2:30 a.m. with his traffic backer lights flashing. When Brady attempted to move to the side of the road, plaintiff started to move over with him instead of passing. There was no traffic or any other reason that would have prevented plaintiff from passing easily. Pulling over a vehicle is a special privilege enjoyed by peace officers

and not enjoyed by the population at large.  Regardless of whether Brady fully pulled over to the shoulder or came to a complete stop, or whether plaintiff had actually committed the offense or intended to make a stop of Brady's vehicle, these uncontradicted facts are sufficient to establish an absence of material fact as to whether the initial stop for suspicion of impersonation of a peace officer was justified.

The *Terry* analysis also requires that the "officer's subsequent actions [be] reasonably related to the circumstances that justified the stop." *Bringham*, 382 F.3d at 506.  "[A] detention must be temporary and last no longer than is necessary to effectuate the purposes of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Id*. at 507. The facts establish that they were.  The parties do not dispute that, being outside of his jurisdiction and only exercising authority after perceiving the commission of a felony, Brady placed a call to the Livingston Parish Sheriff's Office to request assistance.  In addition, after making the stop, Brady observed that plaintiff had been drinking, and also saw an open beer can in plain view.  (R. Doc. 21, Ex. A at 4-7.)  Plaintiff admits this.  (*Id*., Ex. C at 6.)  Brady, Distefano, and Hunt all additionally claim that the officers observed in plain view a hat with the word "police" on it, (*id*., Ex. A at 7, Ex. D at 5, Ex. E at 11), and although Brownlee maintains that although he owned a

hat fitting that description, he claims it was in the trunk and out of view at the time. (*Id.*, Ex. C at 14.) Regardless of whether the hat was in plain view at the time Brady detained plaintiff, these facts in connection with the incident on Highway 442 indicate that Brady already had articulable reasonable suspicion that plaintiff had committed the offense, as well as additional articulable reasonable suspicion, upon seeing an open container of alcohol and observing that the driver had been drinking, that plaintiff had been driving under the influence of alcohol. *See United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003) (noting that reasonable suspicion exists when the officer can point to specific facts that, along with rational inferences, reasonably warrant the seizure). In remaining until a Livingston Parish Sheriff's Officer could arrive and continuing to detain a driver suspected of being intoxicated and of impersonating of a peace officer, Brady's actions were reasonable and lasted no longer than necessary to effectuate the purpose of the stop. *Bringham*, 382 F.3d at 507. While Order 100 of the Hammond Police Department allows officers to exercise authority outside their jurisdiction and driving while intoxicated is not necessarily a felony offense, *see* LA. REV. STAT. § 14:98(B)(1) (noting that a first conviction for operating a vehicle while intoxicated results in imprisonment "for not less than ten days nor more than six months"), Brady's authority had already been invoked by his

observation of what he perceived to be a felony. The Court declines to adopt a rule mandating that Brady, who had made a lawful stop upon suspicion of a felony, would be required to release an intoxicated driver because he only gathered additional articulable suspicion of misdemeanor DWI and no further suspicion of impersonating a peace officer. Accordingly, the Court cannot find that Brady acted unreasonably under the circumstances, and finds that plaintiff has not demonstrated that a genuine issue of material fact remains for trial on the issue of Brady's stop.

Plaintiff, however, argues that a state court has already determined that Brady lacked probable cause to make the stop, and argues that this Court is prevented by the doctrine of issue preclusion from finding differently. The DWI charge was dismissed by state court "on the motion of the state." (R. Doc. 28, Ex. 2.) This was after plaintiff had filed a motion to suppress evidence based on the legality of Brady's stop, as well as for faulty administration of a breathalyser test. (*Id.*, Ex. 1.) The doctrine of issue preclusion is recognized by Louisiana law, *see* LA. REV. STAT. § 13:4231; *Foley v. Entergy La., Inc.*, 946 So. 2d 144, 156 n.2 (La. 2006), and a federal court will give a state-court judgment "the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *McCoy v. Hernandez*, 203 F.3d 371, 374 (5th Cir. 2000). The doctrine, however, "is strictly limited to

narrowly defined circumstances," and "prevents relitigation of the same issue *between the same parties* when the issue was actually litigated and its determination was essential to the first judgment." *Foley*, 946 So. 2d at 156 n.2 (emphasis in original). When there is no identity of parties, there is no issue preclusion under Louisiana law. *Id.* Here, Brady was not a party to the state court proceeding and did not have the opportunity to litigate the issue before the court in that proceeding. (R. Doc. 38 at 6 ("Although Brady may successfully argue that the parties are not identical in this litigation to the parties in the state court criminal proceeding, the state court ruling will undoubtedly be received in evidence and he will have the unenviable task of convincing a jury that he did have probable cause despite a state court judge's conclusion to the contrary.").)

Next, plaintiff argues that Brady violated his Fourth Amendment rights by searching his vehicle without consent and by using force against him. The parties dispute whether these events even took place. Plaintiff claims that, after Brady had made the initial stop, "[h]e threw me on the trunk of my car. Grabbed me by the arm, threw me on the trunk of my car . . ." (R. Doc. 38, Ex. C at 2.) In addition, plaintiff claims that Brady "started searching my vehicle . . . He searched my vehicle." (*Id.*, Ex. C at 3.) Brady contends that he did not

search the vehicle beyond observing the items that were in plain view, and that he did not participate in plaintiff's arrest. (R. Doc. 21, Ex. A at 4-7.) There is therefore a genuine issue of material fact as to whether the search and the use of force took place. Nevertheless, even assuming that the events took place as plaintiff claims they did, Brady is entitled to summary judgment on his § 1983 claim if plaintiff fails to establish that a federal right was violated or that Brady acted in an objectively unreasonable manner and is thus entitled to qualified immunity.

With respect to the search, plaintiff does not provide details of the allegedly illegal search beyond the naked deposition testimony that Brady searched his vehicle. No specifics are provided about the alleged search. Although Brady acknowledges that he looked through the windows of the vehicle, the facts in the light most favorable to the plaintiff could indicate that Brady searched the vehicle itself. Doing so, however, would not rise to the level of a Fourth Amendment violation. Plaintiff admits that the car contained open alcohol containers that were in plain view of both Brady and Distefano. When a vehicle is "readily capable of being used on the highways and it is found stationary in a place not regularly used for residential purposes," a lower expectation of privacy applies. *Mack v. City of Abilene*, 461 F.3d 547, 552 (5th Cir. 2006) (quoting *California v. Carney*, 471 U.S. 386, 392 (1985))

(quotation marks omitted).  An officer may conduct a search of
the vehicle if he has probable cause to believe that the vehicle
contains contraband or evidence of a crime.  *Mack*, 461 F.3d at
552.  Once an officer observes evidence of a crime in plain view,
he has probable cause to conduct a search.  *See United States v.
Vargas*, 643 F.2d 296, 297 (5th Cir. 1981).  Probable cause does
not require certainty.  *United States v. Buchanan*, 70 F.3d 818,
826 (5th Cir. 1995).

Here, after legally and legitimately stopping plaintiff on
suspicion of impersonation of a peace officer, Brady observed
open alcohol containers in plain view.  He also observed that
plaintiff had been drinking.  The totality of these facts are
sufficient to provide probable cause that plaintiff had committed
the offense of driving under the influence of alcohol.  Such a
search, whether or not it took place, would not have by itself
violated the Fourth Amendment, and there is no genuine issue of
material fact as to whether Brady had probable cause to believe
that the car contained evidence of a crime.

With respect to the charge of excessive force, a plaintiff
must show that "he was seized and that he suffered (1) an injury
that (2) resulted directly and only from the use of force that
was excessive to the need and that (3) the force used was
objectively unreasonable."  *Ballard v. Burton*, 444 F.3d 391, 402
(5th Cir. 2006) (quotation marks omitted).  "To state a claim for

excessive use of force, the plaintiff's asserted injury must be more than *de minimis*." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007). Whether the injury plaintiff alleges is serious enough for an excessive-force claim is dependent on the context and related to how much force would be constitutionally permissible under the circumstances. *Id*. Again taking the facts in the light most favorable to the plaintiff, Brady, in response to being asked for his identification and badge number, grabbed plaintiff's arm and threw him on the trunk of his car. (R. Doc. 38, Ex. C at 2.) Plaintiff, however, provides no evidence and makes no allegation that any injury resulted from this interaction. Brady may have used force upon plaintiff, but absent an injury, the force was not unconstitutionally "excessive" under Fifth Circuit precedent. While a material issue of fact may exist as to whether Brady committed state-law battery, the Court does not find that a material issue of fact exists for whether plaintiff's constitutional rights were violated.

Plaintiff's final § 1983 claim alleges a violation of the Fourth Amendment through malicious prosecution. The Fifth Circuit has held that "'malicious prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law."

*Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc); *see also Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009). Malicious prosecution claims might implicate other claims that can be brought under § 1983. For example,

> [t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection — the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued. Such claims of lost constitutional rights are for violations of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983. Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion.

*Castellano*, 352 F.3d at 954. As detailed above, plaintiff has not made out a Fourth Amendment claim for an illegal stop or search of his vehicle, nor has he provided evidence that would allow a factfinder to hold that he was the victim of excessive force. When a plaintiff asserts a § 1983 claim in connection with a claim of malicious prosecution, the Court "must insist on clarity in the identity of the constitutional violations asserted." *Id*. at 945. Here, plaintiff has not made any showing as to how this claim implicates a violation of a constitutional right other than the rights already discussed and dismissed. There is accordingly no issue of material fact on this claim, and Brady is entitled to summary judgment upon it.

*B. Defendants Willie Graves and Ryan Distefano*

Many of the claims plaintiff brings against Brady are also brought against Distefano and, with respect to the state-law claims, against Willie Graves, Sheriff of Livingston County, as well. Because plaintiff does not allege that Distefano illegally searched his vehicle or subjected him to excessive force, the only remaining § 1983 claim against Distefano is the claim that Distefano violated plaintiff's Fourth Amendment rights by arresting him without probable cause.[2]

Plaintiff's central argument is that, because Brady's stop was itself illegal, all information provided to Distefano must be excluded under the exclusionary rule. Pretermitting the question of whether it would be proper to exclude all information Distefano observed from the scene based on whether Brady's stop was legal, the Court has already found that the evidence provided in the motions provide no genuine issue of material fact as to the constitutionality of Brady's stop. Accordingly, the information Brady provided to Distefano, which was based on the incidents that took place on Highway 442 as well as after Brady made the stop, was properly taken into account.

Plaintiff also argues that Distefano lacked probable cause to arrest him for driving while intoxicated. Again, "Probable

---

[2] Plaintiff's § 1983 claim for malicious prosecution fails against Distefano for the same reason it failed against Brady.

cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Nunez-Sanchez*, 478 F.3d 663, 667 (5th Cir. 2007). Plaintiff does not dispute that at the time when Distefano made his arrest, Distefano had received all the information gathered by Brady, he had independently observed that plaintiff had been drinking and that there were open alcohol containers within the vehicle (R. Doc. 21, Ex. D at 3), and that the horizontal gaze nystagmus sobriety test Distefano performed upon plaintiff indicated all six factors of impairment. (*Id.*, Ex. D at 4.) The totality of these facts provide ample probable cause for plaintiff's arrest. Plaintiff's contention that he was arrested in violation of the Fourth Amendment therefore must fail.

## C. State-Law Claims

The Court has determined that defendants are entitled to summary judgment on their claims arising under federal law. Plaintiff, however, includes a number of claims arising under state law. Accordingly, the Court must consider whether to continue to exercise supplemental jurisdiction over plaintiff's remaining claims. *See* 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to the statutory factors, the court must also balance the factors of judicial economy, convenience, fairness, and comity. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446 (5th Cir. 2002). The Court has "wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Still, the "general rule" is to decline to exercise jurisdiction over pendent state-law claims when all federal claims have been eliminated prior to trial. *Amedisys*, 298 F.3d at 446-47.

Here, the Court has dismissed all the claims over which it had original jurisdiction. Only state-law claims remain, and the Court has no independent basis for jurisdiction over them. The Court has not yet addressed the merits of these claims, and as they exclusively involve issues of state law, principles of comity weigh in favor of allowing a state forum to adjudicate them. The Court therefore finds that the rule counseling against the exercise of supplemental jurisdiction over state-law claims

24

when no federal claims remain applies in this case, and it dismisses those state-law claims without prejudice.

## IV. Conclusion

For the foregoing reasons, both Motions for Summary Judgment are GRANTED with respect to plaintiff's claims arising under federal law. Plaintiff's state-law claims are DISMISSED without prejudice.

New Orleans, Louisiana, this ____14th____ day of September, 2009.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE